G. T. FOGLE & COMPANY *v.* OHIO SAVINGS BANK & TRUST COMPANY

(No. 8225)

Submitted October 23, 1935. Decided December 10, 1935.

*Henry S. Cato,* for appellant.

*Brown, Jackson & Knight* and *Herman Bennett,* for appellee.

KENNA, JUDGE:

This suit was brought in the circuit court of Kanawha County by G. T. Fogle & Company, a corporation, against

Ohio Savings Bank & Trust Company, a corporation, and Henry S. Cato and Lowenstein Realty Company, a corporation, as garnishees holding funds of the principal defendant. The purpose of suit was to enforce the lien of a paving certificate held by the plaintiff against Lot 119 in Block A of the town of Dunbar, which lies on the corner of Smith Street and Ohio Avenue. The matter was submitted as an agreed case upon pleadings, exhibits and stipulations. The trial chancellor found in favor of the defendants and dismissed the plaintiff's bill. From the final decree, the plaintiff prosecutes this appeal.

The defendant contends that the suit of the plaintiff is not maintainable because the record shows that the paving assessment certificate, upon which it is based, is void for lack of notice of the assessment proceeding to the then owner of the lot in question. This question is relied upon here, and, inasmuch as we are of opinion that it must be decided in favor of the defendants, we regard it as unnecessary to deal with the other assignments of error.

The chronology necessary to decide the single point upon which we believe the case turns is as follows:

April 19, 1921, the town of Dunbar was incorporated with a charter provision to the effect that the taxes assessed for that year for town purposes should be laid as of April 1, 1921.

December 22, 1924, the paving assessment against the lot in question was laid for the paving of Smith Street which had taken place in that year in the amount of $1,324.80. The defendant, Ohio Savings Bank & Trust Company, subsequently acquired this certificate.

March 16, 1926, a tax deed was executed by Moulton, clerk, transferring the title from Louis and Alex Eleopolas, owners of the lot in question at the time of the incorporation of the town of Dunbar, to Frances and Raymond L. McQuaide.

October 18, 1926, Frances and Raymond L. McQuaide transferred their interest in the lot in controversy to the defendant, Ohio Savings Bank & Trust Company, by a special warranty deed. This deed was recorded November 12, 1926.

January, 1927, Ohio Savings Bank & Trust Company instituted proceedings against Louis and Alex Eleopolas for

the purpose of subjecting the lot in question to the lien of the paving certificate held by them, issued in 1924 for the paving of Smith Street. This proceeding was instituted on the theory that the tax deed from the McQuaides transferred no title to Ohio Savings Bank & Trust Company for the reason that the tax deed of Moulton, clerk, to the McQuaides was void because based upon a delinquency in the payment of city taxes, the assessment of which ran from a time prior to the incorporation of the town of Dunbar.

In March, 1927, proceedings were instituted before the city council of Dunbar looking to the pavement of Ohio Avenue. Notice of the institution of these proceedings was by publication and named Frances and Raymond L. McQuaide as the owners of the lot in question. It will be noted that the McQuaides had conveyed the lot to Ohio Savings Bank & Trust Company by deed dated October 18, 1926, recorded November 12, 1926.

June 20, 1927, a decree was entered in the case of Ohio Savings Bank & Trust Company v. Louis and Alex Eleopolas ordering the lot in question sold in satisfaction of the lien of the paving certificate held by the plaintiff in that proceeding.

In August, 1927, there was publication of a notice to the effect that an assessment was about to be laid for the paving of Ohio Avenue against "owners of property abutting Ohio Avenue." In this notice, the names of the owners were not given.

August 23, 1927, an assessment was laid against Ohio Savings Bank & Trust Company for the cost of the improvement of Ohio Avenue abutting upon the lot in question. The certificate growing out of this assessment is the one sued on.

October 11, 1927, decree of sale was entered in the proceeding of Ohio Savings Bank & Trust Company v. Louis and Alex Eleopolas.

October 12, 1927, the sale was confirmed.

October 13, 1927, a deed was made by a special commissioner to the purchaser, Ohio Savings Bank & Trust Company, which was recorded on the same day.

It will be observed from the foregoing that if, according to the contention of the plaintiff in error, the Ohio Savings

Bank & Trust Company can not now take the position that the tax deed, dated March 16, 1926, from Moulton, clerk, to Frances and Raymond L. McQuaide did not convey title, and that that deed, for the purposes of this case, must be regarded as vesting title in the McQuaides, nevertheless, notice of the proceeding to lay the special assessment for the paving of Ohio Avenue was not given to the then owner of the lot in question. The only notice that it is contended was addressed to any named owners was that given to the McQuaides in March, 1927, almost six months after they had conveyed the lot in question to Ohio Savings Bank & Trust Company. No notice was ever published as to that company, nor served upon it. On the theory that the tax deed must here be regarded as conveying title, Ohio Savings Bank & Trust Company was the owner of the lot in question at the time of the assessment proceedings for the paving of Ohio Avenue.

On the other hand, if we take the position, according to the view of the defendants in error, that the tax deed was void, and that it can be collaterally attacked here, we must reach the conclusion that Louis and Alex Eleopolas remained the owners of the lot in question until their title was divested by the deed made pursuant to the decree in the proceeding of Ohio Savings Bank & Trust Company against them October 13, 1927. It is not claimed that any notice in the assessment proceedings for the paving of Ohio Avenue was addressed to the Eleopolases, or to either of them.

But it is claimed and urged by the plaintiff in error that although the McQuaides were not in fact the owners of the lot in question at the time the assessment proceedings for the paving of Ohio Avenue took place, they were in fact listed as the owners of the lot upon the copy of the land book in the posession of the city clerk of Dunbar, and that the charter of the city of Dunbar authorizes the laying of special assessments against those persons who appear from that copy of the land book, made in September of the previous year, to have been assessed with the general taxes for the year previous to the year in which the special assessment is laid. The provision invoked is section 88 of the charter of the city of Dunbar, being chapter 7 of the Acts (Municipal Charters) of 1921.

This section merely provides that the county assessor shall, on or about the 10th of September of each year, furnish to the city clerk a "transcript of real and personal property in the city of Dunbar," and prescribes the fee to be paid by the city therefor. This section is found in a part of the charter headed "Miscellaneous Provisions" and does not appear to have any immediate connection with the laying of special assessments. We think, under these circumstances, that we would not be justified in concluding that the city charter required nothing more than notice to the owners of property as they appeared from the preceding year's assessment roll in the event a special assessment were laid at any time after the first of January and before the tenth of September. We do not believe that the requirements that the assessor furnish a copy of his assessment books to the city clerk for a stipulated fee could be construed as making the persons assessed with taxes for the current year the actual owners of the property at some later time, for the purposes of a special assessment that might be laid against the property assessed in their names, but really owned by others. Were we to take the position that the construction of the Dunbar charter was as is contended by the plaintiff in error, there would be grave doubt as to whether such a provision would be enforceable. The requirement of notice in the laying of a special assessment is based upon constitutional requirements. To say that a notice given to a person not at the time the actual or record owner of the property, but to some person that might appear upon the assessment rolls as being the owner some months previous, would meet the constitutional requirement of notice to the owner, would seem to be subversive of what the constitution contemplates. But this question is not now before us upon our construction of the Dunbar city charter.

It is urged in the brief of the plaintiff in error that the question of the special assessment under which plaintiff holds its certificate being void as to the lot in question, was not raised in the trial court. We think that it was. The bill of the plaintiff avers that the improvement was made by said city, and the owners of property abutting thereon, including Ohio Savings Bank & Trust Company, were duly and regu-

larly assessed therefor, in strict accordance and compliance with all the provisions of the charter of the city relating to paving. This averment was expressly denied in the answer filed by Ohio Savings Bank & Trust Company, and the averment was expressly made in that answer that the proceeding for the assessment, and the certificate issued thereunder, in so far as the Ohio Savings Bank & Trust Company and lot 119, Block A, were concerned, was totally void. We are therefore of the opinion that the averment of the bill, directly denied by the averment of the answer, put the plaintiff upon proof. From this record, we are of the opinion that no notice was given to the owner of lot 119 in Block A of the assessment proceeding, upon which the certificate sued on by the plaintiff rests.

We, therefore, conclude that the city council of Dunbar acquired no jurisdiction to assess this particular lot in that proceeding, and that the decree of the circuit court of Kanawha County must be affirmed.

*Affirmed.*